# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO CORTEZ BUCKLEY, | CASE NO. 1:04-CV-05688-OWW-LJO P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS FROM ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM |
| v. | |
| EDWARD ALAMEIDA, JR., et al., | |
| Defendants. | (Doc. 28) |
| / | OBJECTIONS DUE WITHIN THIRTY DAYS |

I.  Findings and Recommendations Following Screening of Second Amended Complaint

   A.  Procedural History

Plaintiff Antonio Cortez Buckley ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on December 29, 2003, in the Sacramento Division of the Eastern District of California. On May 11, 2004, the action was transferred to the Fresno Division. On October 26, 2004, the court dismissed plaintiff's complaint, with leave to amend, for failure to comply with Federal Rule of Civil Procedure 8(a). (Doc. 9.) Plaintiff filed an amended complaint on July 11, 2005. (Doc. 19.)

On April 5, 2006, the court issued an order finding that plaintiff's amended complaint stated cognizable claims for relief against defendants Winett, Meadors, and Barker for retaliation (incident 1), defendants Reed, Mack, and Traynham for violation of the Eighth Amendment (incident 2), and defendants Barker and Chappel for violation of the Equal Protection Clause (incident 4), but did not state any other claims upon which relief may be granted under section 1983. (Doc. 24.) The court

ordered plaintiff to either file a second amended complaint or notify the court of his willingness to proceed only on the claims found to be cognizable by the court. (Id.) Plaintiff filed a second amended complaint on May 12, 2006. (Doc. 28.) The court has screened plaintiff's second amended complaint and this Findings and Recommendations issues as a result.

B. Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal

interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

    C.    Summary of Plaintiff's Second Amended Complaint

The events at issue in this action allegedly occurred at the California Correctional Institution (CCI) in Tehachapi, where plaintiff was incarcerated at the time. Plaintiff names Arthur Calderon, Edward S. Alameida, Jr., Nola Grannis, P. L. Vasquez, T. Vo, M. Ortiz, T. W. Meadors, D. R. Reed, Bernard Kordan, T. Traynham, R. L. Papac, David L. Winett, Paul F. Woodley, Dennis Barker, M. Howard, M. Johnson, Mack, Chappel, and John Doe x-ray tech as defendants. Plaintiff is seeking monetary damages and declaratory relief.

Federal courts are courts of limited jurisdiction, and as a preliminary matter, the court must have before it an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757-58 (1982); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

Because the events at issue in this action occurred in 2001 through 2003 at CCI and plaintiff is no longer incarcerated there, the court shall recommend that plaintiff's claim for declaratory relief be dismissed and this action proceed as one for damages only.

    D.    Plaintiff's Claims[1]

        1.    Incident 1

Plaintiff alleges that he is a black Orthodox Jew, and was the only Jewish prisoner housed in Unit 4 at CCI, which holds approximately one-thousand prisoners. Plaintiff alleges that he filed

---

[1] Plaintiff's claims arise from 3 separate incidents. Therefore, the court shall address the claims as they arise from each of the three incidents.

3

a citizen's complaint against David S. Sutherland, a correctional officer, on February 27, 2002, and then filed complaints with the Kings County Grand Jury, the Inspector General's Office, the Federal Bureau of Investigation, and the federal court. Plaintiff alleges that thereafter, defendants Howard, Johnson, Barker, Chappel, Papac, Meadors, and Winett harassed plaintiff daily with threats and excessive body searches, and yelled at plaintiff because he would not shave his beard and stop wearing his kippah. Plaintiff alleges that defendants Winett, Meadors, Barker, and Woodley confiscated his kosher food package on December 6, 2002, in retaliation for the citizen's complaint he filed, which deprived him of his right to practice his religion and celebrate Hanukkah. Plaintiff alleges that defendants discriminated against him because he is Jewish, and retaliated against him for filing the complaint against Sutherland. Plaintiff alleges that on February 5, 2003, defendant Calderon conspired with defendants Winett, Meadors, Barker, and Woodley to cover up the action taken on December 6, 2002, and that on March 25, 2003, defendants Alameida and Grannis conspired to cover up the action taken on December 6, 2002.

        a.      <u>Free Exercise Claim</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

        The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I. The United States Supreme Court has held that prisoners retain their First Amendment

4

rights, including the right to free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The Court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. Id.; McElyea v. Babbit, 833 F. 2d 196, 197 (9th Cir. 1987). "In order to establish a free exercise violation, [plaintiff] must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith." Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997).

Plaintiff's conclusory allegation that the confiscation of his package deprived him of his right to practice his religion and celebrate Hanukkah is insufficient to support a claim plaintiff's constitutional rights were violated. Not every interference with or incident relating to religious practices rises to the level of a constitutional violation, and plaintiff has not alleged facts which would support a claim that the deprivation prevented him from engaging in conduct mandated by his faith. Plaintiff has twice been given leave to amend his complaint and was specifically notified of this deficiency in the court's prior order of April 5, 2006. (Docs. 9, 24.) Accordingly, the court recommends that this claim be dismissed, with prejudice.

### b. Equal Protection Claim

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren, 152 F.3d at 1194.

///

1  Plaintiff has not alleged sufficient facts to support a claim that any of the defendants named
2  in this subsection intentionally discriminated against him based on his race or religion.  Plaintiff has
3  twice been given leave to amend his complaint and was specifically notified of this deficiency in the
4  court's prior order of April 5, 2006.  (Docs. 9, 24.)  Accordingly, the court recommends that this
5  claim be dismissed, with prejudice.

6            c.  Retaliation Claim

7  Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition
8  the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.
9  1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65
10 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment
11 retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action
12 against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled
13 the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance
14 a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

15 Yelling and threats do not rise to the level of a constitutional violation.  Oltarzewski v.
16 Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).
17 However, in light of federal notice pleading standards, the court finds plaintiff's allegation that
18 defendants Howard, Johnson, Barker, Chappel, Papac, Meadors, and Winett subjected him to
19 excessive body searches after he filed complaints is sufficient to state a claim for retaliation.  Further,
20 plaintiff's allegation that defendants Winett, Meadors, Barker, and Woodley confiscated his kosher
21 food package in retaliation for the citizen's complaint plaintiff filed against Officer Sutherland is
22 sufficient to state a claim for retaliation.

23           d.  Conspiracy Claim

24 Plaintiff's allegation that defendants Calderon, Winett, Meadors, Barker, Woodley,
25 Alameida, and Grannis conspired to cover up the confiscation of his package does not give rise to
26 a claim for relief under section 1983.  Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.
27 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff
28 has twice been notified that conclusory allegations are insufficient to state a claim under section

1983 and that he must allege facts linking defendants' actions or omissions to a violation of his rights. (Docs. 9, 24.) Plaintiff has not done so and the court recommends that this claim be dismissed, with prejudice.

    2.  Incident 2

Plaintiff alleges that on December 11, 2002, he and defendant Calderon got into an argument concerning the confiscation of his kosher food package. Plaintiff alleges that defendant Calderon tried to justify the confiscation and slurred him by saying, "You people are always complaining." (2nd Amend. Comp., 16:11-12.) Plaintiff alleges that in retaliation for arguing with him, defendant Calderon had him placed in the "eight ball program," which tortures prisoners for profit. (Id., 16:15-17.)

Plaintiff alleges he was taken to the medical clinic where defendants Winett, Meadors, Papac, Howard, and Johnson conspired with defendant Calderon to retaliate against and torture plaintiff by forcing him to have an x-ray taken, which subjected him to unnecessary radiation. Plaintiff alleges defendants Vo, Kordan, and Doe conspired with defendants Calderon, Winett, Meadors, Papac, Howard, and Johnson to retaliate and torture plaintiff by falsifying the x-ray report to state that plaintiff had rectal contraband. Plaintiff alleges defendants' actions were retaliatory, discriminatory, and constituted cruel and unusual punishment.

Plaintiff alleges he was placed in punitive segregation on contraband watch, known as the eight ball program. Plaintiff allege defendant Reed made him remove his pants, shirt, and shoes, and placed plaintiff in full mechanical restraints, a waistchain, handcuffs, and leg irons clad only in a t-shirt, boxer shorts, and shower shoes. Plaintiff alleges defendant Reed placed him in a small holding cage the size of a telephone booth, and he was freezing cold. Plaintiff alleges defendants Mack, Reed, and Traynham denied him clothing or a blanket. Plaintiff alleges that he told defendant Mack he would commit suicide to stop the pain from the cold. Plaintiff alleges that defendant Ortiz, a medical technical assistant, was summoned but denied plaintiff medical treatment. Plaintiff alleges defendant Kim, a doctor, was called but he also denied plaintiff medical treatment, and defendant Ortiz told him he was not going to "get shit" because he disrespected the warden. (Id., 18:5.) Plaintiff alleges that defendants Ortiz conspired with defendants Reed, Traynham, and Mack to

retaliate and torture plaintiff by denying him medical care and falsifying a medical report by stating he gave plaintiff medical care.

Plaintiff alleges he was subsequently placed in a freezing strip cell with fecal matter on the floor and bunks, no running water, no blanket, and no cleaning supplies for three days. Plaintiff alleges he went on a hunger strike and on the third day was given another x-ray, which cleared him of having rectal contraband. Plaintiff alleges that defendants Vazquez, Winett, and Grannis conspired to cover up the incident.

### a. Retaliation and Equal Protection Claims

Plaintiff has not alleged any facts that support a claim that he was retaliated against for exercising any rights protected under the First Amendment, and has not alleged any facts that support a claim that he was intentionally discriminated against based on his religion. Accordingly, plaintiff fails to state a claim for retaliation or for denial of equal protection. Plaintiff was previously notified of what is necessary to state claims for retaliation and denial of equal protection. (Docs. 9, 24.) Therefore, the court recommends dismissal of these claims, with prejudice.

### b. Cruel and Unusual Punishment

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane

conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

The allegations that plaintiff was forced to take two body x-rays and that defendants Vo, Kordan, and Doe falsified medical reports do not rise to the level of an Eighth Amendment violation. Despite plaintiff's assertion to the contrary, the taking of an x-ray does not constitute torture. Plaintiff's allegation that he was held in a freezing cold, filthy cell for three days would be sufficient to support an Eighth Amendment claim. However, plaintiff has not alleged any facts linking his subjection to these conditions to any of the defendants. As the court informed plaintiff in its previous screening order, only those defendants involved in confining plaintiff in the cell for three days and/or with knowledge of the conditions plaintiff was being held in for three days are proper defendants under this claim. (Doc. 24.) Plaintiff was previously given leave to amend but failed to cure the deficiencies. (Id.; see also Doc. 9.) Accordingly, the court recommends plaintiff's Eighth Amendment claims be dismissed, with prejudice.

         c.  Conspiracy Claim

Plaintiff's allegation that defendants conspired to cover up the incident does not state a claim. Plaintiff has neither alleged facts supporting the existence of a conspiracy nor alleged facts sufficient to support a claim that any underlying constitutional rights were violated as a result of a conspiracy.

///

///

3. <u>Incident 3</u>

Plaintiff alleges that on March 7, 2003, when he was at the property office, defendant Barker told plaintiff he did not "give a shit about Jews." (2nd Amend. Comp., 19:14-15.) Plaintiff alleges that defendant Chappel agreed with Barker and told plaintiff that there is payback for inmates who disrespect the warden. Plaintiff alleges that on March 12, 2003, defendants Barker and Chappel retaliated and discriminated against him, and denied him his right to practice his religion by confiscating his two menorahs, candles, and radio. Plaintiff alleges that defendant Barker assured him that he and defendant Chappel had packed all of plaintiff's property, and called plaintiff a "smart ass Jew boy" as Barker was leaving the office. (<u>Id</u>., 20:5.) Plaintiff was subsequently transferred to California State Prison-Corcoran, where he discovered that his menorahs, candles, and radio were missing.

      a. <u>Free Exercise, Retaliation, and Equal Protection Claims</u>

Plaintiff's property was packed and plaintiff was transported to another prison, whereupon he discovered the missing religious items. These allegations do not support a free exercise claim against defendants Barker and Chappel. Further, plaintiff has not alleged any facts that support a claim that he was retaliated against for exercising any rights protected under the First Amendment. However, plaintiff's allegations are sufficient to support a claim that defendants Barker and Chappel intentionally discriminated against him based on his religion.

D.    <u>Conclusion</u>

The court finds that plaintiff's second amended complaint contains cognizable claims for relief against defendants Howard, Johnson, Barker, Chappel, Papac, Meadors, and Winett for retaliation arising out of excessive body searches (incident 1), against defendants Winett, Meadors, Barker, and Woodley for retaliation arising out of the confiscation of plaintiff's kosher package (incident 1), and against defendants Barker and Chappel for violation of the Equal Protection Clause (incident 3). However, the court finds that plaintiff's second amended complaint does not contain any other claims upon which relief may be granted under section 1983. Plaintiff was provided with the applicable legal standards, notified of the need to allege facts linking the acts or omissions complained of to named defendants, and given the opportunity to amend on two prior occasions, but

plaintiff failed to cure the deficiencies.[2] (Docs. 9, 24.) Accordingly, the court recommends that further leave to amend not be granted, that this action proceed forward on plaintiff's cognizable claims, and that the remaining claims and defendants be dismissed from this action.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on plaintiff's second amended complaint, filed May 12, 2006, on plaintiff's retaliation claim against defendants Howard, Johnson, Barker, Chappel, Papac, Meadors, and Winett arising out of excessive body searches (Incident 1), retaliation claim against defendants Winett, Meadors, Barker, and Woodley arising out of the confiscation of his kosher food package (Incident 1), and equal protection claim against defendants Barker and Chappel arising out of the disappearance of his religious property (Incident 3);

2. Plaintiff's claim for declaratory relief be dismissed from this action for mootness, and this action proceed as one for damages only;

3. Plaintiff's free exercise claim against defendants Winett, Meadors, Barker, and Woodley alleged in Incident 1 be dismissed from this action, with prejudice, for failure to state a claim upon which relief may be granted;

4. Plaintiff's equal protection claim against defendants alleged in Incident 1 be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

5. Plaintiff's conspiracy claim against defendants Calderon, Winett, Meadors, Barker, Woodley, Alameida, and Grannis alleged in Incident 1 be dismissed from this action, with prejudice, for failure to state a claim upon which relief may be granted;

6. Plaintiff's retaliation, equal protection, Eighth Amendment, and conspiracy claims alleged in Incident 2 be dismissed, with prejudice, for failure to state any claims upon which relief may be granted;

///

---

[2] Plaintiff's inability or unwillingness to comply with the court's orders is evidenced by his failure to separately state his claims, something he was specifically directed to do. (Docs. 9, 24.)

7. Plaintiff's free exercise and retaliation claims alleged in Incident 3 be dismissed, with prejudice, for failure to state any claims upon which relief may be granted; and

8. Defendants Calderon, Alameida, Grannis, Vasquez, Vo, Ortiz, Reed, Kordan, Traynham, Mack, and Doe x-ray tech be dismissed from this action based on plaintiff's failure to state any claims upon which relief may be granted against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    December 2, 2006**                /s/ Lawrence J. O'Neill
b9ed48                                         UNITED STATES MAGISTRATE JUDGE